575 P.2d 356

**STATE of Arizona, Appellee,**

v.

**Arthur HILL, Appellant.**

**No. 1 CA–CR 2517.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 31, 1978.

158

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division, Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Robert F. Cleere, Nile B. Smith, Phoenix, for appellant.

## OPINION

SCHROEDER, Judge.

The appellant, Arthur Hill, pleaded guilty to the crime of assault with a deadly weapon and was sentenced on July 23, 1976, to a term of not less than nine and one-half to not more than ten years. In this appeal he argues first, that the plea was the result of coercion, second, that he was not properly advised of the minimum prison sentence which could be imposed in the event he was denied probation, and third, that there was an inadequate factual basis for the plea. We remand for further proceedings in connection with the first two issues raised by appellant.

The case arose out of an argument between appellant and the victim, Benjamin Smith, regarding Smith's alleged rape of appellant's wife. During the course of the argument, appellant shot and seriously injured Smith. Appellant was then charged with assault with a deadly weapon. The appellant originally pleaded not guilty, but changed his plea to guilty and the plea was accepted by the trial court.

During the change of plea hearing, the trial court asked appellant whether anyone had forced him to change his plea to guilty. The appellant responded that he and his family had been the victims of a threatening letter and of attempted shootings. He further indicated that he had attempted to contact his lawyer, Mr. Rosenquist, about the incidents. The colloquy between the appellant and the court was as follows:

"THE COURT: Has anybody attempted to force you to change your plea to guilty?

THE DEFENDANT: My wife—they—we had been shot at twice and we got a threatening letter. I have the letter at home. We have a threatening letter saying that she better not testify against Smitty. If she did—she better not try to press charges against Smitty. If she did, such and such would happen to her, because they already—they're positive that I'm going to go to jail so they will be out by herself, her and the kids.

And they shot at us twice on our way home. We took the kids to the movie once. I had to push them all the way down to the ground. It's been the same car; it's a Mustang. I tried to tell Mr. Rosenquist over the phone. The same car twice, and never could get the—they hollered, 'It was for Smitty'; but thanks to God nobody got hit. Each time I pushed them down.

THE COURT: Your attorney nor the prosecutor not I have attempted to force you to change your plea?

THE DEFENDANT: No sir; I didn't mean—I thought you meant as far as someone—

THE COURT: No public employee or public official has attempted to force you to change your plea; have they?

THE DEFENDANT: No.

THE COURT: Do you understand no public person can do that and no public person can act through a private individual and do it, either?

THE DEFENDANT: Yes, sir; I understand."

■ Appellant contends, on the basis of this record, that his plea was not voluntary, but was the product of coercion. The State counters that any threats which occurred were unrelated to the defendant's plea.

We do not wholly accept the position advanced by either party. The trial court is required to determine whether the defendant's guilty plea is "voluntary and not the result of force, threats or promises (other than a plea agreement)." Ariz.R.Crim.P. 17.3. *See generally Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). We do not view the existing record in this case as providing a sufficient basis to determine whether this appellant's plea was the product of coercion. In response to the court's specific question "has anybody attempted to force you to change your plea to guilty?" appellant responded that he had been threatened. On the other hand, the nature of his response does indicate that the threats may have been related to matters other than changing his plea. The trial court, however, did not inquire into the nature of the threats or their relation to the plea. Instead, the trial court limited itself to establishing that the threats had not come from public employees or officials.

The State has not attempted to uphold this conviction on the ground that a plea which is in fact the product of threats may be considered involuntary only if the threats come from government officials. Although most reported cases concern alleged coercive activities on the part of law enforcement officials, *e. g., Waley v. Johnston,* 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942) prosecuting attorneys, *e. g., State v. Spellman,* 104 Ariz. 438, 454 P.2d 980, *supplemented,* 104 Ariz. 597, 457 P.2d 274 (1969), or defense counsel, *e. g., Trevino v. State,* 18 Ariz.App. 515, 518, 503 P.2d 991, 994 (1972), the fear of violence from others has also been held to render a guilty plea involuntary. *Nickels v. State,* 86 Fla. 208, 98 So. 502 (1923); *State v. Poglianich,* 43 Idaho 409, 252 P. 177 (1927); *Little v. Commonwealth,* 142 Ky. 92, 133 S.W. 1149 (Ct. App.1911). *See also United States v. Colson,* 230 F.Supp. 953 (S.D.N.Y.1964), in which the court held that a plea was involuntary where it was the product of threats to the defendant's family by two unidentified policemen and other unidentified individuals not connected with the government. The court there stressed the duty of the trial court as a trier of fact to determine "the ultimate question of whether the defendant, at the time he pled guilty, had the free will essential to a reasoned choice . . . ." *Id.* at 955. The trial court erred in failing to establish the basis for such a determination in this case.

The State relies upon *State v. Lerch,* 107 Ariz. 529, 490 P.2d 1 (1971). There, however, the defendant during the plea hearing expressly agreed that he had not been forced into the plea. The appellant in this case never acknowledged that his plea was voluntary. Moreover, while the court in *State v. Lerch, supra,* emphasized that the defendant had been represented by counsel throughout the proceedings and that counsel had also expressly represented to the trial court that the plea was strictly the defendant's decision, counsel never so represented in this case. Rather the record indicates that the appellant had not been able to inform his counsel about the threats prior to the change of plea hearing.

Under these circumstances, we hold that the record is insufficient to support a determination of voluntariness of the plea, and that the matter should be remanded in order to permit the trial court to determine whether any threats received by the defendant so influenced his plea as to make it involuntary.

■ The appellant next argues that the trial court did not properly advise him of the consequences of his plea pursuant to Rule 17.2 of the Arizona Rules of Criminal Procedure in that he was not informed that the minimum prison term for the crime to which he was pleading was five years. Appellant pleaded guilty to assault with a deadly weapon. The provisions of A.R.S. § 13–249(A) and (B) in effect at the time of the plea and sentencing provided that upon conviction of a first offense of assault with a deadly weapon probation was possible, but that the prison term ranged from a minimum of five years to a maximum of life imprisonment. In this case, appellant was advised by the court that he could receive probation and a maximum term of life imprisonment, but he was never advised that if the court determined that he should be imprisoned, the minimum term was five years. The plea agreement is also silent as to the minimum prison term. It provided with regard to sentencing only that the minimum sentence was probation and the maximum sentence was life. The defendant should have been informed of the minimum prison term. *State v. Gil,* 27 Ariz. App. 190, 552 P.2d 1205 (1976). Moreover, even if this information is required only by rule 17.2 and is not constitutionally required under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the error in this case was prejudicial since the defendant received a sentence substantially over the minimum prison term of five years. *See State v. Ellis,* 117 Ariz. 329, 572 P.2d 791 (1977), and *State v. Cuthbertson,* 117 Ariz. 62, 570 P.2d 1075 (1977).

There also appears to have been some confusion at the time of the hearing for the trial judge inquired of counsel about the minimum sentence:

"THE COURT: The punishment set by the State Legislature is up to life in the State Penitentiary; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I don't know what the minimum is. Is there a mandatory minimum?

MR. ROSENQUIST: No.

MRS. HOUSEWORTH: No, sir; it's probation on the first offense."

Thus, neither the plea agreement nor the transcript of the hearing reflect the true range of possible sentences and both inaccurately suggest that the sentence could range anywhere between probation and life.[1] The case should be remanded to the trial court for further proceedings to determine whether the defendant was aware of the fact that the minimum prison term he could receive was five years.

■ Finally, the appellant argues that there was an insufficient factual basis for

1. The state argues that the court had the option of treating this as a plea to assault with a deadly weapon, in which a five year term would apply, or as a plea to assault without a deadly weapon, in which case a minimum of one year would apply. The plea agreement itself does not indicate that the appellant was pleading to alternative charges nor was any such possibility ever explained to the defendant in the court proceedings.

the plea. We disagree. The appellant stated in court that he shot the victim after the victim swung at the appellant and then turned to run. We find no error in connection with the factual basis for the plea.

The case is remanded to the trial court for further proceedings consistent with this opinion to determine whether the appellant's plea was voluntary, and whether he was aware, prior to the trial court's acceptance of his guilty plea, of the minimum prison sentence provisions contained in A.R.S. § 13–249(B). In the event that the trial court resolves either of these questions in favor of the appellant, the trial court is directed to set aside the guilty plea.

Remanded.

DONOFRIO, P. J., and OGG, J., concur.